***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds good grounds to receive further evidence, but not to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** DEFENDANTS' MOTION TO ADMIT NEW EVIDENCE
Defendants moved, pursuant to Rule 609 and Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission and other applicable law, for an Order allowing the re-opening of the record in this matter to include additional evidence in the form of *Page 2 
Plaintiff's payroll records for the pay dates from October 2, 2008 through November 6, 2008. Plaintiff did not submit a written response to Defendants' Motion. After consideration of the written and oral arguments of the parties, Defendants' Motion to Admit New Evidence is hereby GRANTED. Accordingly, Plaintiff's payroll records for the pay dates from October 2, 2008 through November 6, 2008, attached as exhibits to Defendants' Motion, shall be attached to the end of the stipulated exhibits.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties are subject to the provisions of the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction over the parties and of the subject matter of these proceedings.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer at all times relevant to these proceedings, and is correctly named above.
4. There is no question as to the mis-joinder or the non-joinder of any party.
5. Plaintiff's average weekly wage is $390.38, yielding a compensation rate of $259.99.
6. On or about April 7, 2005, Plaintiff sustained an injury (or started missing time from work because of disease), with the exact date to be determined by the North Carolina Industrial Commission. *Page 3 
7. Plaintiff's injury/disease arose out of and in the course of her employment and is compensable.
8. Defendants paid Plaintiff only some medical compensation.
9. At the hearing before the Deputy Commissioner, the parties stipulated that on February 4, 2008, Defendant-Employer transferred Plaintiff from the upholstery sewer position to the ETON line position.
10. At the hearing before the Deputy Commissioner, the parties stipulated that Plaintiff developed right carpal tunnel syndrome as a result of her upholstery sewer position.
11. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Various documents, including:
 i. North Carolina Industrial Commission forms and filings;
 ii. Correspondence from Defendant-Carrier to Dr. Timothy Hugh Kirkland and Plaintiff dated April 20, 2006;
 iii. Plaintiff's medical records;
 iv. Job description for the ETON line position;
 v. Correspondence from Plaintiff's counsel to Defendants' counsel dated October 27, 2008;
 c. Stipulated Exhibit Three: Video of the upholstery sewer position;
 d. Stipulated Exhibit Four: Video of the ETON line position.
 *********** ISSUES *Page 4 
The issues to be determined are:
1. Whether Plaintiff's carpal tunnel syndrome and shoulder conditions are compensable?
2. Whether Plaintiff is entitled to any further workers' compensation benefits?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 37 years old, with a date of birth of May 16, 1973. Plaintiff's primary language is Spanish, and an interpreter assisted with her testimony at the hearing before the Deputy Commissioner. Plaintiff worked as an upholstery sewer for Defendant-Employer from 1999 through February 3, 2008. The upholstery sewer position involves repetitive use of both hands and arms in sewing upholstery fabrics.
2. In 1995, Plaintiff developed bilateral hand pain and weakness. In June 2005, Defendants authorized Plaintiff to see Dr. Allen Richard Edwards, a family medicine and occupational medicine specialist, who diagnosed her with tendonitis and/or carpal tunnel syndrome. Dr. Edwards ordered physical therapy, which provided some relief to Plaintiff.
3. Beginning October 11, 2005, Defendants authorized Plaintiff to see Dr. Timothy Hugh Kirkland, an orthopaedist with a specialty in hand surgery, who diagnosed bilateral hand and right wrist tendonitis. A March 22, 2006 nerve conduction study revealed right carpal tunnel syndrome. On May 8, 2006, Dr. Kirkland performed right carpal tunnel syndrome release surgery. On May 23, 2006, Dr. Kirkland allowed Plaintiff to return to her upholstery sewer position with no restrictions. *Page 5 
4. On October 23, 2006, Defendants authorized Plaintiff to see Dr. William Martin Pekman, an orthopaedist with a specialty in hand surgery. Plaintiff was continuing to complain of hand numbness. Dr. Pekman felt that Plaintiff could have an underlying issue explaining her pain such as thyroid disease or chronic inflammatory problems, and so recommended a repeat nerve conduction study. However, Defendants would not authorize the nerve conduction study recommended by Dr. Pekman.
5. On November 29, 2007, Plaintiff presented to Dr. Anthony John DeFranzo, a plastic surgeon, for a second opinion. Dr. DeFranzo's physical examination of Plaintiff revealed a positive Phalen's test and a positive Tinel's test, which is indicative of carpal tunnel syndrome. Dr. DeFranzo diagnosed Plaintiff with bilateral carpal tunnel syndrome, issued work restrictions of light-duty with no repetitive work, no sewing, and a 10 pound weight limit, and recommended a repeat nerve conduction study.
6. On January 7, 2008, Defendants' counsel, with the consent of Plaintiff's counsel, sent correspondence to Dr. DeFranzo regarding Plaintiff being transferred to an ETON line position with Defendant-Employer. Working on the ETON line would require Plaintiff to pick up a piece of material weighing less than one pound, place it on a material holder which would move it down an automated line to the next employee, and continue this process until completion of an order. In response, Dr. DeFranzo replied that he thought that Plaintiff could perform the duties described for the ETON line position as long as she could proceed at her own pace. At the time, however, Dr. DeFranzo did not have the video of the ETON line position later entered into evidence. On February 3, 2008, Plaintiff began working on Defendant-Employer's ETON line. Plaintiff had opportunities to take breaks. *Page 6 
7. On July 15, 2008, Defendants authorized Plaintiff to see Dr. Lois Kathleen Osier, an orthopaedist with a specialty in hand surgery. Plaintiff complained of pain in her neck, as well as bilateral shoulder, elbow, arm, wrist, hand, and middle finger pain. Dr. Osier noted that the June 25, 2008 nerve conduction study recommended by Dr. DeFranzo revealed mild bilateral upper extremity sensory motor poly-neuropathy, and some bilateral slowing of the distal onset latency of the median nerves. However, Dr. Osier further noted that she did "not often see complete alleviation of electrophysiological findings, even following a carpal tunnel syndrome." Dr. Osier found Plaintiff's multiple pain complaints to be "not likely related to carpal tunnel syndrome," although she did conclude that there was "evidence of mild bilateral carpal tunnel syndrome." Accordingly, Dr. Osier did not recommend any further surgery, found Plaintiff to be at maximum medical improvement with respect to "the carpal tunnel issue," and assigned a three percent permanent partial disability rating "with regards to her [Plaintiff's] right carpal tunnel."
8. On October 2, 2008, Plaintiff presented to Dr. DeFranzo again, with complaints of worsening wrist pain, and also pain in her neck, back, and right arm. Dr. DeFranzo ordered a nerve conduction study with ultrasound in order to determine whether Plaintiff had significant narrowing of the right median nerve in the carpal tunnel, and whether she required further surgery. Dr. DeFranzo also took Plaintiff out of work due to his concern that Plaintiff was doing significant, permanent nerve damage by continuing to work in the ETON line position.
9. On October 30, 2008, Plaintiff returned to Dr. DeFranzo, who interpreted the most recent nerve conduction study with ultrasound ordered by him as revealing a slight latency deficit in the right wrist with an ultrasound finding consistent with possible scarring and median nerve entrapment in the carpal tunnel, and no significant latency deficit in the left wrist. Physical examination of Plaintiff revealed positive Tinel's and Phalen's signs. Dr. DeFranzo ordered *Page 7 
neurolysis of Plaintiff's right median nerve, and noted that she would need to remain out of work for six weeks following this surgery.
10. On January 16, 2009, Plaintiff returned to Dr. Osier with continued complaints of bilateral upper extremity pain. Dr. Osier interpreted the October 2008 nerve conduction study as revealing "very mild carpal tunnel on the right and no evidence of carpal tunnel on the left." Dr. Osier concluded that "although she [Plaintiff] has pain, I do not feel that she has any ongoing carpal tunnel syndrome and, in fact, her right carpal tunnel release seems to have been successful." Moreover, Dr. Osier was of the opinion that tendonitis was the cause of Plaintiff's bilateral upper extremity pain.
11. On February 12, 2009, Plaintiff presented to Dr. DeFranzo again. Physical examination revealed positive Tinel's and Phalen's signs in the right but not in the left hand. Dr. DeFranzo noted that "[i]n my opinion, she [Plaintiff] has nerve conduction studies that are nearly normal, but the nerve conduction studies are the least important part of the constellation of signs and symptoms of carpal tunnel syndrome," and that Plaintiff was "unable to work currently with her right hand because of the pain, numbness, and tingling." Accordingly, Dr. DeFranzo recommended that Plaintiff undergo a second right carpal tunnel release with exploration in order to determine whether "she has significant scarring in the carpal tunnel that have [sic] further entrapped the nerve or are preventing the nerve from gliding."
12. On March 2, 2009, Dr. DeFranzo performed a repeat right carpal tunnel release surgery on Plaintiff. Dr. DeFranzo's surgical findings revealed that Plaintiff's median nerve was being pinched with an hourglass deformity similar to stepping on a garden hose. Post-operatively, Plaintiff experienced substantial improvement in her right hand pain, and her numbness in the right hand resolved. *Page 8 
13. On April 1, 2009, Plaintiff presented to Dr. DeFranzo with complaints of left hand and shoulder pain. Dr. DeFranzo administered a steroid injection to Plaintiff's left carpal tunnel. In addition, Dr. DeFranzo referred Plaintiff to Dr. Ethan Ron Wiesler, an orthopaedist with a specialty in hand surgery, for her left shoulder complaints.
14. On April 29, 2009, Plaintiff saw both Dr. DeFranzo and Dr. Wiesler. Dr. DeFranzo noted that Plaintiff had "good improvement" since her last visit, and issued her light-duty work restrictions to begin the following week, which included a 10 pound weight limit and minimal repetitive work for the next 12 weeks. At Plaintiff's visit with Dr. Wiesler, she reported a gradual onset of left shoulder pain, weakness, and stiffness due to increased use of her left hand/shoulder following her March 2, 2009 right carpal tunnel release surgery. Dr. Wiesler diagnosed Plaintiff with left rotator cuff syndrome and left shoulder sprain/strain, ordered physical therapy, and performed an arthrocentesis on her left sub-acromial bursa.
15. On May 20, 2009, Plaintiff presented to Dr. DeFranzo with complaints of left wrist numbness and pain that she rated as one on a pain scale of one through 10. Physical examination revealed a positive Phalen's test. Dr. DeFranzo diagnosed Plaintiff with de Quervain's disease, which is similar to carpal tunnel syndrome but involves the base of the thumb at the top of the wrist, which is a different part of the wrist than that which is associated with carpal tunnel syndrome. On this same date, Plaintiff returned to the ETON line position with Defendant-Employer.
16. On June 10, 2009, Plaintiff returned to both Dr. DeFranzo and Dr. Wiesler with complaints of right hand pain and continued left shoulder pain. Dr. DeFranzo continued Plaintiff's light-duty work restrictions with a 10 pound weight limit, but now restricted her to *Page 9 
non-repetitive work. Dr. Wiesler was of the opinion that Plaintiff could return to work the following day with no use of her left arm or hand.
17. On July 8, 2009, Plaintiff presented to Dr. Wiesler again, at which time she reported that her left shoulder was "doing better with medication and being off work/resting." Dr. Wiesler did not think that Plaintiff had a left rotator cuff tear, and did not think that she required surgery at this time. However, Dr. Wiesler took Plaintiff out of work until her next scheduled visit with him in six weeks.
18. On August 19, 2009, Plaintiff returned to Dr. Wiesler. Dr. Wiesler diagnosed Plaintiff with left shoulder sprain/strain, bicipital tenosynovitis, and bursitis. Because Plaintiff's left shoulder complaints were not resolving, Dr. Wiesler recommended surgery, and kept Plaintiff out of work.
19. On September 10, 2009, Plaintiff underwent a two-part surgery performed by Dr. DeFranzo and Dr. Wiesler. First, Dr. DeFranzo performed a left carpal tunnel release, and then Dr. Wiesler performed a left shoulder arthroscopic surgery on Plaintiff. Dr. Wiesler's surgical findings included left bicipital tenosynovitis, rotator cuff tendonitis, and bursitis.
20. At his deposition, Dr. DeFranzo explained that nerve conduction studies do not reveal how severe carpal tunnel syndrome is, but only if a person has it. Dr. DeFranzo opined, and the Full Commission so finds, that Plaintiff's second right carpal tunnel release surgery was successful and provided relief of her symptoms of pain. In addition, Dr. DeFranzo opined that the upholstery sewer position was a substantial causative factor in the development of Plaintiff's carpal tunnel syndrome, de Quervain's disease, and her left shoulder complaints, although he would ultimately defer to Dr. Wiesler with respect to Plaintiff's left shoulder condition. Dr. DeFranzo was also of the opinion that the ETON line position was a substantial causative factor *Page 10 
in the development of Plaintiff's de Quervain's disease and left shoulder complaints, and a substantial aggravating factor with respect to her carpal tunnel syndrome, although the ETON line position would be less likely to cause carpal tunnel syndrome. Dr. DeFranzo did not distinguish his causation opinions regarding Plaintiff's carpal tunnel syndrome between her right and left hands, and the parties did not seek clarification on this issue.
21. With respect to the issue of increased risk, Plaintiff's counsel asked Dr. DeFranzo to assume that the duties of the upholstery sewer and ETON line positions were as shown on the videos stipulated into evidence, and then asked him whether he had "an opinion satisfactory to yourself and to a reasonable degree of medical certainty as to whether or not either or both of the jobs presents [sic] a greater risk of causing carpal tunnel syndrome than would otherwise be experienced?" Dr. DeFranzo responded:
 [y]es, the first job is highly repetitive. There's not much question that would cause carpal tunnel syndrome. The second job in my opinion would aggravate an existing carpal tunnel syndrome. It would be less likely to cause it on its own, but someone that has carpal tunnel syndrome that did that job would, I think, have an aggravation of their carpal tunnel syndrome."
22. Neither Plaintiff's counsel nor Defendants' counsel asked any further questions regarding the issue of increased risk to clarify Dr. DeFranzo's response to the specific question posed by Plaintiff's counsel. Further, it does not appear that Plaintiff's counsel asked any questions specific to the issue of increased risk and de Quervain's disease. Taking Dr. DeFranzo's deposition testimony as a whole, it would appear that although Plaintiff's counsel specifically asked him whether he had an opinion regarding the issue of increased risk, Dr. DeFranzo responded by giving an opinion as to causation.
23. Although the actual response to the question of Plaintiff's counsel began with "[y]es, the first job is highly repetitive," it is unclear from the record whether Dr. DeFranzo *Page 11 
meant for this to be an affirmative response to the specific question raised — whether he had an opinion — and he then went on to discuss causation, whether Dr. DeFranzo meant for this to be an affirmative response that he did have an opinion and that it was his opinion that the upholstery sewer and ETON line positions create an increased risk for the development of carpal tunnel syndrome compared to the general public, or whether Dr. DeFranzo meant for the response to be an affirmation of his opinion that the upholstery sewer and ETON line positions create an increased risk for the development of carpal tunnel syndrome compared to the general public, although he actually discussed causation. Because there were no follow-up questions to clarify this confusion, the Full Commission finds that it would be speculative to assume what Dr. DeFranzo meant by his response. Thus, the Full Commission finds, based upon the greater weight of the evidence, that Dr. DeFranzo did not offer an opinion specifically addressing the issue of whether the upholstery sewer and/or ETON line positions created an increased risk for the development of either carpal tunnel syndrome or de Quervain's disease over that of the general population.
24. At his deposition, Dr. Wiesler opined that the upholstery sewer and/or ETON line positions created an increased risk for the development of "shoulder problems" over that of the general population. Dr. Wiesler was also of the opinion that the upholstery sewer and/or ETON line positions were significant causative factors in the development of Plaintiff's left shoulder conditions. Specifically, Dr. Wiesler felt that the repetitive nature of both of these positions in lifting objects, whether heavy or not, made them "very likely to cause upper extremity discomfort, tendonitis, inflammation." The Full Commission gives great weight to the opinion testimony of Dr. Wiesler. *Page 12 
25. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to meet her burden of proving that her left carpal tunnel syndrome and de Quervain's disease are compensable occupational injuries.
26. The Full Commission finds, based upon the greater weight of the evidence, that the upholstery sewer and/or ETON line positions create an increased risk for the development of inflammatory shoulder conditions over that of the general population. The Full Commission further finds that the upholstery sewer and/or ETON line positions were significant causative factors in the development of Plaintiff's left shoulder conditions, including the left bicipital tenosynovitis, rotator cuff tendonitis, and bursitis that Dr. Wiesler diagnosed and treated.
27. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is not at maximum medical improvement with respect to her left shoulder conditions.
28. The medical treatment Plaintiff received from Dr. DeFranzo with respect to her right carpal tunnel syndrome and from Dr. Wiesler with respect to her left shoulder conditions was reasonably required to effect a cure, to give relief, and/or to lessen her period of disability with respect to her compensable occupational diseases, including her right carpal tunnel syndrome and her left shoulder conditions. The Full Commission further finds that any future treatment recommended by Dr. DeFranzo and/or Dr. Wiesler with respect to her compensable occupational diseases, including her right carpal tunnel syndrome and her left shoulder conditions, is reasonably necessary.
29. The Full Commission finds, based upon the greater weight of the evidence, that the ETON line position did not constitute suitable employment with respect to Plaintiff's physical restrictions resulting from her compensable right carpal tunnel syndrome, given the repetitive lifting of objects required in this position over an eight hour work day, and Dr. *Page 13 
DeFranzo's opinion that Plaintiff's continued employment in that position would likely cause her significant, permanent nerve damage.
30. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff proved that she was temporarily and totally disabled from October 30, 2008 through May 20, 2009, and from July 8, 2009 through the present and continuing. On October 2, 2008, Dr. DeFranzo wrote Plaintiff out of work; however, Plaintiff continued to work for Defendant-Employer until October 30, 2008, at which time Dr. DeFranzo continued to keep her out of work. Dr. DeFranzo kept Plaintiff out of work until May 20, 2009, when she returned to work for Defendant-Employer in the ETON line position with light-duty restrictions. On July 8, 2009, Dr. Wiesler took Plaintiff completely out of work, and he has yet to release her to return to work.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In Rutledge v. Tultex Corp./King's Yarn, the Supreme Court of North Carolina held that in order for an occupational disease to be compensable under the North Carolina Workers' Compensation Act, a plaintiff must prove that the claimed disease is: "(1) characteristic of persons engaged in the particular trade or occupation in which the [plaintiff] is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the [plaintiff's] employment." Rutledge v. Tultex Corp./King'sYarn, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). In cases where the employment exposed the *Page 14 
worker to a greater risk of contracting the disease than the general public, the first two elements are satisfied. Rutledge,308 N.C. at 93-94, 301 S.E.2d at 365.
2. The parties stipulated that Plaintiff developed right carpal tunnel syndrome as a result of her upholstery sewer position. However, Plaintiff failed to meet her burden of proving that her left carpal tunnel syndrome and de Quervain's disease are compensable occupational injuries. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000);Rutledge, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
3. Plaintiff established by the greater weight of the evidence that as a result of her employment with Defendant-Employer in the upholstery sewer and/or ETON line positions, she contracted right carpal tunnel syndrome, an occupational disease. N.C. Gen. Stat. § 97-53(13) (2009). In addition, Plaintiff established by the greater weight of the evidence that as a result of her employment with Defendant-Employer in the upholstery sewer and/or ETON line positions, she contracted left bicipital tenosynovitis, rotator cuff tendonitis, and bursitis, all of which are also compensable occupational diseases. Id. The opinion testimony of Dr. Ethan Ron Wiesler, which the Full Commission gave great weight, is sufficient to meet Plaintiff's burden of proving that her employment duties placed her at greater risk for contracting left bicipital tenosynovitis, rotator cuff tendonitis, and bursitis, and that Plaintiff's employment duties, more likely than not, caused the development of her left bicipital tenosynovitis, rotator cuff tendonitis, and bursitis.Rutledge, 308 N.C. 85, 301 S.E.2d 359 (1993). Dr. Wiesler had sufficient facts concerning the nature of Plaintiff's employment duties from which to render competent opinions.
4. Plaintiff is not at maximum medical improvement with respect to her left shoulder conditions. *Page 15 
5. Defendants failed to meet their burden of proving that Plaintiff's continued right hand complaints were not the result of her admittedly compensable right carpal tunnel syndrome, and that her compensable right carpal tunnel syndrome did not necessitate her March 2, 2009 repeat right carpal tunnel release surgery performed by Dr. Anthony John DeFranzo. Perez v. AmericanAirlines/AMR Corp., 174 N.C. App. 128, 620 S.E.2d 288 (2005).
6. The medical treatment Plaintiff received with respect to her right carpal tunnel syndrome and left shoulder conditions was reasonably necessary in order to effect a cure, to give relief, and/or to lessen her period of disability, and Defendants are obligated to pay for such treatment. Any future treatment recommended by Dr. DeFranzo and Dr. Wiesler with respect to her right carpal tunnel syndrome and left shoulder conditions is also reasonably necessary. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1 (2009).
7. The ETON line position did not constitute suitable employment with respect to Plaintiff's physical restrictions resulting from her compensable right carpal tunnel syndrome, given the repetitive lifting of objects required in this position over an eight hour work day, and Dr. DeFranzo's opinion that Plaintiff's continued employment in that position would likely cause her significant, permanent nerve damage. Peoples v. Cone Mills, Corp.,316 N.C. 426, 342 S.E.2d 798 (1986).
8. On October 30, 2008, Plaintiff became medically disabled from any employment, and Plaintiff remained medically disabled from any employment as a result of her admittedly compensable right carpal tunnel syndrome through May 20, 2009. On July 8, 2009, Dr. Wiesler took Plaintiff completely out of work, and he has yet to release her to return to work. Therefore, Plaintiff is entitled to temporary total disability compensation in the amount $259.99 per week from October 30, 2008 through May 20, 2009, and from July 8, 2009 through the present and *Page 16 
continuing. N.C. Gen. Stat. § 97-29 (2009); Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $259.99 from October 30, 2008 through May 20, 2009, and from July 8, 2009 through the present and continuing. Any accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's admittedly compensable right carpal tunnel syndrome and her left shoulder conditions, including any future treatment recommended by Dr. Anthony John DeFranzo and Dr. Ethan Ron Wiesler, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel. Defendants shall deduct and pay directly to Plaintiff's counsel every fourth compensation check.
4. Defendants shall pay the costs of these proceedings.
This the 25th day of October 2010.
 S/___________________ *Page 17 
LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1